REC'D APR 01 2026

# JS 44 (Rev. 04/21) — CIVIL COVER SHEET

---

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.

**I. PLAINTIFFS**

Chad Mark Franco Ferrari, 1119 Wallace Street, Philadelphia, PA 19123

**DEFENDANTS**

Hon. Daniel R. Sulman (individual and official administrative capacity), Court of Common Pleas, 1501 Arch Street, Philadelphia, PA 19102

**ATTORNEYS FOR PLAINTIFF**

Pro Se

**ATTORNEYS FOR DEFENDANT**

Unknown at this time — Defendant is a sitting state judge; counsel to be determined after service

**II. BASIS OF JURISDICTION**

☑ Federal Question (28 U.S.C. § 1331) — 42 U.S.C. § 1983

**III. CITIZENSHIP OF PRINCIPAL PARTIES**

N/A — Federal Question jurisdiction

**IV. NATURE OF SUIT**

☑ 440 — Other Civil Rights

☑ Civil Rights — 42 U.S.C. § 1983 (Non-Prisoner)

**V. ORIGIN**

☑ 1 — Original Proceeding

**VI. CAUSE OF ACTION**

42 U.S.C. § 1983 — Deprivation of civil rights under color of state law

Constitutional violation: First and Fourteenth Amendments (Due Process, Retaliation, Equal Protection)

**VII. REQUESTED IN COMPLAINT**

☑ Jury Trial Demanded

Demand: $1,000,000+ (compensatory) plus punitive damages

**VIII. RELATED CASE(S) IF ANY**

**YES — Related case:**

Ferrari v. Leonard et al., Case No. 2:26-cv-01866-KSM

Hon. Karen Spencer Marston, U.S.D.J.

Relationship: Same plaintiff; overlapping factual nucleus; Track 2 of multi-track federal civil rights litigation against separate defendants arising from the same Family Division proceedings

Date: April 1, 2026

______________________________

**Chad Mark Franco Ferrari, Pro Se**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CHAD MARK FRANCO FERRARI,**
Plaintiff,

v.

**HON. DANIEL R. SULMAN,**
in his individual capacity for damages,
and in his official capacity to the extent prospective
relief is sought pursuant to Ex parte Young, 209 U.S. 123 (1908),
Defendant.

**Civil Action No. _______________**
(Related to Ferrari v. Leonard et al., 2:26-cv-01866-KSM)

**JURY TRIAL DEMANDED**

---

# COMPLAINT

42 U.S.C. § 1983 — First and Fourteenth Amendments
Administrative Capture Theory

---

# I. INTRODUCTION

---

**1.** This action challenges one defendant — Daniel R. Sulman — and one constitutional violation: his deliberate exercise of administrative authority over Plaintiff's proceedings for 91 days after his formal recusal on October 30, 2025, and after the District Attorney named him a material witness on January 13, 2026.

**2.** Defendant formally recused, triggering mandatory obligations under Canon 2.11 and the Due Process Clause requiring complete withdrawal — adjudicatory and administrative — from any decision affecting the same litigant's proceedings. Instead, Defendant was elevated to Administrative Judge of the Family Division after his recusal and after being named a material witness — a promotion that gave him greater administrative power over the very dockets from which he had been removed.

**3.** He used that authority to assign judges with documented professional and familial ties to himself on Plaintiff's parallel dockets, to time his own re-appearance on Plaintiff's criminal docket 91 days post-recusal, and to cancel the neutral Custody Hearing Officer review that would have provided independent oversight of his own orders. This is a recused judge who continued to control the board by selecting which pieces replaced him.

**4.** At present, no independent clinical evidence supports the characterizations attributed to Plaintiff. Yet Defendant's post-recusal administrative authority continued to steer the very dockets from which he had been removed.

**5.** The same litigant, in the same courthouse, before different judges, did not produce the same judicial conduct. On February 7, 2025, Judge Wahl denied expedited relief in this very case: "This is denied as not appropriate for expedited relief. Everyone is excused." (Feb. 7 Tr. p.17:4–6.) Defendant later rubber-stamped every Blank Rome request without independent analysis. Same parties. Same case. Different judge. Different outcome. Neutral adjudication was demonstrably achievable in the same system. Defendant's pattern is not explained by a "difficult pro se litigant"; it is explained by bias and retaliation.

**6.** This action does not seek to review, reverse, or set aside any state-court judgment. It does not ask this Court to decide who should have custody of the Ferrari children or whether any specific family-court ruling was correct. No relief requested herein requires this Court to supervise, intervene in, or enjoin any pending state-court proceeding. To the extent Younger v. Harris, 401 U.S. 37 (1971), is raised, the bad-faith exception applies: the Commonwealth's own prosecutors named Defendant as a material witness in the very criminal proceedings he administratively

routed, and the administrative filing-obstruction machinery operated by Defendant's chambers staff deprived Plaintiff of an adequate state forum to raise these constitutional claims. Dombrowski v. Pfister, 380 U.S. 479 (1965); Kugler v. Helfant, 421 U.S. 117 (1975); Gibson v. Berryhill, 411 U.S. 564 (1973). This action challenges administrative routing acts, not the criminal prosecutions themselves. Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69 (2013). It challenges only Defendant's non-immune administrative conduct after recusal — including assignment, routing, self-assignment, cancellation of neutral review, and gatekeeping of access to neutral process — and the constitutional injuries caused by those acts. The domestic relations exception recognized in Ankenbrandt v. Richards, 504 U.S. 689 (1992), bars only federal court issuance of divorce, alimony, or child custody decrees; it does not bar § 1983 constitutional tort claims arising from judicial misconduct in the administration of domestic proceedings. McLaughlin v. Pernsley, 866 F.2d 628 (3d Cir. 1989).

**7.** The sequence of events — recusal, promotion, continued administrative control, cancellation of neutral review, and direct post-recusal involvement in Plaintiff's dockets — supports a plausible inference, at the pleading stage, that Defendant's continued administrative involvement was neither coincidental nor neutral.

**8.** Plaintiff seeks prospective relief only to remedy ongoing violations of federal law; no relief is sought that would compel compliance with state law as such. The Court need not review, vacate, or modify any state-court order to grant relief.

**9.** Judicial immunity does not shield administrative acts. Forrester v. White, 484 U.S. 219 (1988). Every factual allegation is supported by certified transcripts, official docket entries, or the Commonwealth's own filings.

## II. JURISDICTION AND VENUE

---

**10.** Subject matter jurisdiction: 28 U.S.C. §§ 1331, 1343. Venue: 28 U.S.C. § 1391(b). Related action: 2:26-cv-01866-KSM (Track 2, separate defendants). This Track 1 stands alone. Declaratory and injunctive relief: 28 U.S.C. §§ 2201, 2202.

## III. PARTIES

---

**11.** Plaintiff Chad Mark Franco Ferrari resides at 1119 Wallace Street, Philadelphia, PA 19123. Father of Calvin Ferrari (age 3, bilateral cochlear implants) and Caia Ferrari (age 5). Separated from both children for 420+ consecutive days. Income zero since May 2025.

**12.** Defendant Daniel R. Sulman is a Judge of the Court of Common Pleas of Philadelphia County. During the period relevant to this Complaint, Defendant held and exercised administrative authority over case assignment, routing, and scheduling within the Family Division — including after his formal recusal on October 30, 2025. Whether denominated Administrative Judge or acting under delegated or retained administrative authority, Defendant exercised the administrative functions challenged herein.

# IV. FACTUAL ALLEGATIONS

---

## MODULE 1: PRE-RECUSAL RETALIATORY MOTIVE

**13.** Between March 13 and September 22, 2025, Defendant presided over six hearings spanning 341 certified transcript pages. The following 10 on-record statements — each verified by certified transcript — establish the retaliatory motive that animated his subsequent administrative acts. (The October 22, 2025 hearing before Judge Litwin, in which Plaintiff accused Defendant on the certified record, is cited separately in §17 and Count III.)

| Date | Verified On-Record Statement | Citation |
|---|---|---|
| Mar. 13 | Pagnanelli stated Plaintiff had been cleared by Dr. Cotterell. Defendant was on notice of the clinical clearance. Thirteen days later, he stripped medical custody anyway — signing Blank Rome's proposed order verbatim. The only intervening event: Plaintiff's vaccine safety discussion. | Tr. p.39:24–40:1 |
| Jun. 18 | *"Is that the vaccine you never received, that you got injured from? That one? That might sound odd to some people."* | Tr. pp.53–54 |
| Jul. 14 | *"I have similar conclusions to your wife."* — Explicit judicial adoption of adverse party's characterization before protracted trial. | Tr. p.160 |
| Jun. 18 | Plaintiff invoked 42 U.S.C. § 1983 on the record (pp.56–57). Within approximately 15 minutes: "I predicted the future. Oh, my God" (p.57:5), phone confiscated (p.60), criminal referral initiated. Rights invocation to criminal prosecution in one hearing. | Tr. pp.56–60 |
| Jul. 14 | *"You're not. You're not capable of co-parenting, as far as I can tell."* — Declared without clinical evaluation, expert testimony, or Section 5328 analysis. | Tr. p.45:24–25 |
| Jul. 14 | *"Well you don't have legal custody right now, sir. You don't."* Then: *"Oh. Now it does."* — Told Plaintiff he could not post photos of his own children. No court order prohibited this. | Tr. pp.55–56 |
| Jul. 14 | When Plaintiff raised the Janice Sulman connection, Defendant adjudicated his own disqualification: *"They don't socialize. They have no financial interest together at all... I have no conflict with respect to my sibling."* A judge deciding his own disqualification motion violates Caperton v. A.T. Massey Coal, 556 U.S. 868 (2009). | Tr. pp.33–36 |
| Sep. 22 | *"If I was 100 percent certain... you would have gotten six months."* — A family court judge issuing sentencing threats about the criminal case originating from his own orders. | Tr. p.24 |
| Sep. 22 | Plaintiff: "You had Cassi Segulin monitoring my Instagram." Defendant: "I had nobody monitor anything." | Tr. pp.18–20 |

| | | |
|---|---|---|
| | Plaintiff: "So maybe she did and you're not admitting it?" Defendant: *"I don't know, sir."* — A non-denial on the certified record. | |
| All hearings | Across 341 certified transcript pages: zero respondent exhibits admitted. Zero Section 5328(a) best-interest findings. The term "best interest" never cited. Every Blank Rome proposed order signed verbatim without independent analysis. | All transcripts |

**14.** The challenged statements came before Plaintiff's evidence was introduced. This defeats any "provoked by litigant behavior" defense: the adjudicative posture was established before the evidence was heard.

**15.** In his sworn judicial questionnaire published to voters, Defendant wrote: "Individuals should not be detained without a judicially signed warrant" and "A judge should ensure the right for all parties to be heard." (Sulman Judicial Questionnaire, Tier A.) Defendant's own sworn standards impeach his own conduct: bench warrants issued from void proceedings without service, and zero respondent exhibits were admitted across 341 transcript pages. The standard he swore to uphold is the standard he violated.

**16.** Plaintiff's vaccine-related medical condition is clinically documented by Labcorp testing. (Exhibit L.)

## MODULE 2: POST-RECUSAL ADMINISTRATIVE ACTS

Defendant personally participated in, directed, authorized, or knowingly permitted each administrative act described in this Module. These acts occurred pursuant to or with the acquiescence of the administrative practices governing assignment, routing, and scheduling in the Family Division. The January 29, 2026 self-assignment is documented on the official docket under Defendant's own name and title. The remaining acts occurred within the administrative chain of command that Defendant controlled as Administrative Judge.

### A. Recusal and Promotion (October 30, 2025 – January 2026)

**17.** On October 30, 2025, Defendant entered a formal recusal order, creating a non-discretionary duty — adjudicatory and administrative — to withdraw completely from all proceedings involving Plaintiff. Canon 2.11 of the Pennsylvania Code of Judicial Conduct is cited as evidence of the mandatory character of this obligation, not as a freestanding state-law cause of action. (Signed order, Tier A.) Eight days earlier, Plaintiff accused Defendant on the certified record before Judge Litwin of "running a money scheming operation with Maria Testa and Blank Rome." (Oct. 22 Tr. pp.27–28.) The recusal followed the public accusation.

**18.** Defendant did not resign as Administrative Judge. He was elevated to that role after his recusal and after the DA named him a material witness — a promotion that gave a recused, DA-named material witness greater administrative power over the very dockets from which he had been removed.

**19.** In a sworn PFA petition, the opposing party stated words to the effect of: "Daniel Sulman can't save me now." This sworn characterization reflects the perception that Defendant was viewed as a protector and backstop rather than a neutral adjudicator — a perception that persisted even after his formal recusal and material-witness designation. (Sworn PFA petition, Tier A.)

### B. The Rubber-Stamp Pattern as Administrative Implementation

**20.** Before recusal, Defendant signed every Blank Rome proposed order verbatim: the March 26, 2025 medical custody order, the Fahad Ali evaluator substitution, the contempt finding. Each reproduced opposing counsel's draft language without modification, independent findings, or Section 5328 analysis. This pattern reinforces the inference that Defendant's pre-recusal acts implemented opposing counsel's directives rather than exercising independent judicial discretion — consistent with the administrative-capture theory that continued post-recusal.

**21.** The March 26 order also cancelled the April 3, 2025 Custody Hearing Officer listing — eliminating the neutral CHO review that would have provided independent oversight. The

captured judge used his own order to remove the mechanism that would have checked his captured orders.

**C. The Litwin Assignment and the Janice Sulman Network**

**22.** Plaintiff's divorce/support docket (D-24-118413) was assigned to Judge Litwin. Judge Litwin has a documented public LinkedIn recommendation of Janice Sulman — Defendant's sister and Cipriani Inn member. (LinkedIn screenshot, Tier A.) Regardless of which administrative officer formally executed the assignment, the placement of a judge with documented ties to Defendant's family on Plaintiff's parallel docket is evidence of the captured administrative apparatus that Defendant later exploited post-recusal. This section is presented as evidence of the administrative capture pattern and appearance concerns, not as a standalone claim against Litwin.

**D. DA Material Witness Designation (January 13, 2026)**

**23.** ADA Vincent Corrigan filed a motion naming Defendant as a material witness. (DA Motion, Tier A.) DA-initiated out-of-county requests are exceedingly rare. The motion was served on the Defender Association (Kevin Yao signed at 12:47 PM). This designation confirmed that the Commonwealth's own prosecutors concluded Defendant could not serve in any capacity in Plaintiff's proceedings.

**E. The January 29 Self-Assignment — The Core Administrative Act**

**24.** On January 29, 2026 — 91 days post-recusal, 16 days post-material-witness designation — Defendant appeared on Plaintiff's criminal docket. The entry reads: "Administrative Judge — Family Division Daniel Sulman — Trial Scheduled — Courtroom 6G." (CPCMS, Tier A.) A Family Division title on a Municipal Criminal Court docket raises serious questions about subject-matter authority independent of the recusal violation. A DVU administrative manager informed Plaintiff the day before that Sulman had self-assigned to the January 29 hearing, and that it is usually Judge Fanning, Palmer, or Mallios in Room 6G — never Sulman. (Tier B.)

**25.** The same day, Defendant filed "Court Request for Continuance — Judicial Recusal." (CPCMS, Tier A.) He appeared, then withdrew. The PFA manager had pre-announced Defendant's assignment the day before; when Plaintiff sent a confirming email, the manager retracted. (Email chain, Tier B.)

**F. Assignment of Palmer — Cipriani Inn Vice President (January 29–30)**

**26.** Following Defendant's re-recusal, the criminal docket was assigned to Judge Palmer — current Vice President of the Cipriani Inn, the same professional organization where Defendant

served as Secretary. (Inn roster, document metadata identifying "Shelby Atkins Sulman" — Defendant's spouse — as the document author/administrator, Tier A.) This placed a leader in Defendant's own organization on Plaintiff's criminal docket.

**G. The Cipriani Inn Nexus**

**27.** Confirmed simultaneous members: Defendant (Secretary), Janice Sulman (sister), Vidas (opposing lead counsel), Piscopo (admitted Sep. 22 Tr. p.10:14–23), Palmer (VP), Papademetriou (entered predicate custody order after disclosing ex parte contact with Vidas, Feb. 20 Tr. p.4).

**H. Void Room 406 Proceeding (March 2, 2026)**

**28.** Both criminal cases were routed to Room 406 — mental health diversion court. No judge listed. No service. Plaintiff not present. A previously scheduled hearing before Judge Pittman was cancelled without explanation. Joseph Kearney (Office of Court Reporters) confirmed in writing: no record exists for this proceeding. (Kearney email, Tier A.) An MHE order was entered directing Plaintiff to appear April 28 with a bench warrant for noncompliance. This routing occurred under Defendant's retained administrative chain.

**I. Administrative Gatekeeping — Filing Obstruction**

**29.** Marco Capone (head of 11th floor clerks) refused Plaintiff's emergency filing on January 15, 2026, called sheriffs, and consulted Defendant — a recused, DA-named material witness — before refusing. Plaintiff's December 23, 2025 Motion for Leave to Conduct Depositions identified Defendant's chambers staff (Margaret Tobey and Brittney Sullivan) as administrative gatekeepers. The very next day — Christmas Eve 2025 — two things happened simultaneously: (1) a PFA petition was filed, processed, and signed with extraordinary speed on a holiday with minimal court staffing, becoming the predicate for Criminal Case MC-51-CR-0000640-2026; and (2) Defendant re-entered Plaintiff's docket after formal recusal. This one-day gap between Plaintiff's December 23 motion to depose Defendant's chambers staff and the December 24 acceleration of the criminal track supports a plausible inference of retaliatory motive at the pleading stage. Plaintiff was subsequently arrested January 10, 2026 and re-arrested February 2, 2026 — both on charges arising from the December 24 email that was sent the same day as the PFA filing and Defendant's docket re-entry. The timing supports a plausible inference, at the pleading stage, that the administrative apparatus accelerated the criminal track in response to the exposure of the gatekeeping chain.

**MODULE 3: CONCRETE HARMS CAUSED BY ADMINISTRATIVE ACTS**

**30.** Defendant's administrative acts systematically removed the neutral checkpoints that normally protect litigants from captured process: the Custody Hearing Officer review was cancelled, neutral reassignment was compromised by connected-judge placement, the recusal itself was violated by self-assignment, the Room 406 proceeding had no judge and no record, and filing intake was blocked after consultation with the recused judge. Each checkpoint was independently eliminated through administrative action.

**31.** But for Defendant's administrative acts, Plaintiff would have received a neutral tribunal and meaningful access to his children. The following harms flow directly from the documented administrative conduct:

**32.** (a) 420+ consecutive days in which Plaintiff was denied access to a neutral decisionmaking process concerning his children (compensable as a procedural due process injury under Carey v. Piphus, 435 U.S. 247 (1978), without requiring this Court to evaluate the correctness of any state-court custody determination); (b) income destroyed (zero since May 2025) while opposing party earns $1.3M annually, with APL petitions blocked through a docket routed to a judge with documented ties to Defendant's family; (c) displacement from marital residence in proceedings denied a neutral decisionmaking process (compensable as a process injury under Carey v. Piphus without requiring evaluation of any possession order); (d) three arrests on proceedings tainted by Defendant's involvement; (e) exclusion from Calvin's cochlear implant team, CHOP portal, and IEP during the critical auditory-verbal development window (ages 0–5) — directly caused by the March 26 rubber-stamp order entered 13 days after Defendant was told on the record that Plaintiff had been clinically cleared; (f) MHE order from a void proceeding under Defendant's administrative chain; (g) imminent risk of constitutional harm to the June 4, 2026 protracted custody hearing before Judge Wahl — supporting prospective injunctive relief.

**33.** Each constitutional deprivation alleged in Counts I–III is directly and proximately caused by one or more specific post-recusal administrative acts described in Module 2, rather than by any underlying state-court custody or support determination. Each harm is directly traceable to a specific post-recusal administrative act identified in Module 2, independent of any underlying custody determination, including assignment decisions, cancellation of neutral review, routing to a non-record proceeding, and obstruction of filing access. The Court need not evaluate any custody determination to resolve this action.

## V. JUDICIAL IMMUNITY DOES NOT APPLY

---

**34.** Judicial immunity shields adjudicatory functions, not administrative acts. Forrester v. White, 484 U.S. 219 (1988). The following acts are administrative: (a) post-recusal assignment of Litwin and Palmer; (b) self-assignment January 29; (c) routing cases to Room 406; (d) retention of administrative authority after recusal; (e) direction of Capone/Tobey/Sullivan gatekeeping; (f) cancellation of the CHO review in the March 26 order.

**35.** A judge who acts after formal recusal acts without jurisdiction. Under Pennsylvania law, formal recusal creates a non-discretionary obligation of complete withdrawal; acts taken in violation of that obligation are subject to challenge as void. Canon 2.11. In this Circuit, administrative acts by judges are not shielded by absolute immunity. Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 772–73 (3d Cir. 2000). Under the functional test, the challenged acts — post-recusal case assignment, docket routing, scheduling, staff direction, and cancellation of a neutral review mechanism — are logistical and managerial functions that any administrative officer could perform. They are not acts of adjudication, and they did not involve the resolution of disputes between parties before the court. A judge who adjudicates his own disqualification motion violates due process. Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009).

## VI. CAUSES OF ACTION

---

**COUNT I: § 1983 — Fourteenth Amendment Procedural Due Process**

Damages are sought against Defendant in his individual capacity only. To the extent Defendant retains any present authority — direct or delegated — over assignment, routing, or scheduling affecting Plaintiff's dockets, prospective declaratory and injunctive relief is sought. Even if Defendant's formal title has changed, voluntary cessation of unconstitutional conduct does not moot a case where the defendant has not demonstrated there is no reasonable expectation the wrong will be repeated. City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982). Defendant remains a sitting judge in the same courthouse with continuing access to the administrative machinery challenged herein. Plaintiff's June 4, 2026 protracted custody hearing before Judge Wahl is pending; Cipriani Inn members Palmer (current VP) and Papademetriou remain active in Plaintiff's parallel proceedings — establishing a real and immediate threat of continuing constitutional injury absent injunctive relief. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). Ex parte Young, 209 U.S. 123 (1908), authorizes prospective relief to end that ongoing involvement.

Even if the Court were to conclude that some challenged conduct was adjudicative and therefore immune, the Complaint independently states claims based on non-immune post-recusal administrative acts — including assignment, routing, self-assignment, cancellation of neutral review, and filing obstruction — that are sufficient to proceed.

Taken as true at the pleading stage, the well-pleaded facts alleged herein plausibly establish that Defendant engaged in non-immune administrative conduct after recusal that deprived Plaintiff of a neutral decisionmaking process. Resolution of this motion does not require the Court to resolve factual disputes, but only to accept the well-pleaded allegations as true.

**36.** Defendant acted under color of state law at all relevant times in his capacity as a judge and administrative authority of the Court of Common Pleas. It is clearly established that a litigant is entitled to a neutral decisionmaker free from participation by a recused judicial officer in any capacity — including administrative — affecting the same proceedings. Plaintiff's liberty interest in the parent-child relationship is fundamental. Troxel v. Granville, 530 U.S. 57 (2000); Santosky v. Kramer, 455 U.S. 745 (1982). Defendant deprived Plaintiff through: (1) post-recusal assignment-rigging; (2) self-assignment while named material witness; (3) rubber-stamping proposed orders without independent analysis or Section 5328 findings; (4) cancelling the neutral CHO review; (5) routing cases to a void proceeding. But for these administrative acts, Plaintiff would have received a neutral tribunal. The constitutional injury is the deprivation of an impartial decisionmaking process — not the content of any specific state-court order. The

deprivation alleged is structural: the systematic removal of neutral adjudicative safeguards through administrative action. At the time of the conduct, it was clearly established that a recused judge may not participate — directly or indirectly — in the same litigant's proceedings, including through assignment, routing, or scheduling functions. Even in novel factual circumstances, officials can be on notice that their conduct violates established law. Hope v. Pelzer, 536 U.S. 730, 741 (2002). The constellation of In re Murchison, 349 U.S. 133, 136 (1955) ("no man can be a judge in his own case"), Ward v. Village of Monroeville, 409 U.S. 57 (1972) (organizational stake disqualifies), and Caperton, 556 U.S. at 876 (objective probability of bias requires recusal), placed any reasonable judge on notice that continuing to exercise administrative authority over the same litigant's proceedings after formal recusal — while simultaneously named as a material witness — was constitutionally impermissible.

**COUNT II: § 1983 — Fourteenth Amendment Substantive Due Process**

**37.** Defendant, acting under color of state law, engaged in conduct that shocks the conscience: facilitating 420+ consecutive days of parental separation through post-recusal administrative acts — including assignment-rigging, cancellation of neutral CHO review, routing to a void proceeding, and filing obstruction — without any clinical justification and while excluding Plaintiff from Calvin's cochlear implant care during the critical auditory-verbal development window. County of Sacramento v. Lewis, 523 U.S. 833 (1998). No legitimate government interest justifies a recused, DA-named material witness self-assigning to the same litigant's criminal docket. No legitimate government interest justifies routing cases to an unrecorded proceeding with no listed judge. Defendant knew from the March 13 transcript that Plaintiff had been clinically cleared; he signed the adverse order thirteen days later. A recused judge who self-assigns 91 days post-recusal while simultaneously named a material witness does not act inadvertently. This satisfies Lewis's deliberate-indifference standard for non-emergency executive action.

**COUNT III: § 1983 — First Amendment Retaliation**

**38.** Defendant, acting under color of state law, retaliated against Plaintiff for protected activity. On October 22, 2025, Plaintiff publicly accused Defendant of misconduct on the certified record before Judge Litwin, including financial irregularities involving Defendant's sister. (Oct. 22 Tr. pp.9:1–5, 11:12–18.) Plaintiff also presented a recording of his criminal defense attorney stating that the law does not matter in connection with Defendant's proceedings. (Oct. 22 Tr. p.11:17–18.) Within approximately twenty minutes of sharing that recording, the attorney withdrew. (Oct. 22 Tr. pp.36:20–22.) Eight days later, Defendant recused but retained administrative authority. Every post-recusal adverse act followed in direct causal sequence from that petition activity. Pre-recusal vaccine-related mockery (Jun. 18, Jul. 14 Tr.) establishes the retaliatory motive that Defendant carried into his post-recusal administrative role. Snyder v. Phelps, 562 U.S. 443

(2011) (public concern speech protected); California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972) (right to petition courts). Additional protected activity: invoking § 1983 on the certified record (Jun. 18 Tr. pp.56–57) and filing motions and federal proceedings. Adverse actions: post-recusal administrative acts including assignment of connected judges, self-assignment while named material witness, cancellation of neutral review, routing to a void proceeding, and filing obstruction. Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977).

## VII. PRAYER FOR RELIEF

---

Allowing this action to proceed to limited discovery on the narrow question of post-recusal administrative routing imposes minimal burden relative to the substantial constitutional concerns raised.

**39.** Prospective declaratory judgment (sought first, as required by the 1996 amendment to 42 U.S.C. § 1983 limiting injunctive relief against judicial officers) that Defendant's post-recusal administrative acts violated the First and Fourteenth Amendments;

**40.** Permanent injunction: (a) removing any administrative authority Defendant holds over any docket involving Plaintiff; (b) requiring neutral re-assignment; (c) prohibiting Defendant from any further administrative involvement — direct or delegated — in cases involving Plaintiff;

**41.** Compensatory damages in excess of $1,000,000;

**42.** Punitive damages;

**43.** Attorney's fees under 42 U.S.C. § 1988;

**44.** Such other relief as this Court deems just and proper.

Initial discovery can be limited to document discovery concerning assignment logs, routing records, scheduling communications, and records concerning the January 29, 2026 appearance and the March 26, 2025 CHO cancellation.

## VIII. JURY DEMAND

---

**45.** Plaintiff demands trial by jury on all claims so triable.

**VERIFICATION**

---

I, Chad Mark Franco Ferrari, verify under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: April 1, 2026

**Chad Mark Franco Ferrari, Pro Se**
1119 Wallace Street, Philadelphia, PA 19123
chadferrari@me.com | (215) 483-1985

**EXHIBIT LIST**

A: DA Motion, January 13, 2026 (Sulman named material witness)

B: Cipriani Inn Roster (metadata: "Shelby Atkins Sulman")

C: CPCMS Docket, January 29, 2026 (self-assignment)

D: CPCMS Docket, January 29, 2026 (same-day re-recusal)

E: Signed Recusal Order, October 30, 2025

F: March 13, 2025 Transcript (Cotterrell clearance + pharmacology debate)

G: June 18, 2025 Transcript (vaccine mockery, § 1983 invocation, phone seizure)

H: July 14, 2025 Transcript ("similar conclusions," co-parenting, photo prohibition, self-adjudication of disqualification)

I: September 22, 2025 Transcript (sentencing threat, Segulin non-denial)

J: October 22, 2025 Transcript before Litwin (corruption accusation)

K: Pagnanelli Text Messages (vaccine-based reasoning)

L: Labcorp Report, December 14, 2024 (Spike Antibody 2,371 U/mL)

M: Kearney Written Confirmation (no record — Room 406)

N: Litwin LinkedIn Recommendation of Janice Sulman

O: In re Cohen, No. 63 EAP 2024 (Pa. Jan. 22, 2026)

P: PFA Manager Email Chain (pre-announcement and retraction)

Q: March 26, 2025 Order (verbatim from BR proposed order + CHO cancellation)

R: BR January 31, 2025 Petition (proposed order — verbatim comparison)

S: December 23, 2025 Motion for Leave to Depose (naming Tobey/Sullivan)

T: Papademetriou February 20, 2025 Transcript p.4 (ex parte disclosure)

U: Sulman Judicial Questionnaire (sworn pre-election statements)

V: February 7, 2025 Wahl Transcript p.17 (denied expedited relief — neutral comparator)

W: Sworn PFA Petition containing "Daniel Sulman can't save me now" characterization

## CERTIFICATE OF SERVICE

---

I, Chad Mark Franco Ferrari, hereby certify that a true and correct copy of the foregoing Complaint, together with all exhibits and supporting documents, will be served upon Defendant through the United States Marshal for the Eastern District of Pennsylvania, upon the Court's granting of Plaintiff's IFP Application and direction of service pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

Service addresses:

**Defendant:**
Hon. Daniel R. Sulman
Chambers, Court of Common Pleas
Family Court Division
1501 Arch Street
Philadelphia, PA 19102

**Pennsylvania Attorney General (courtesy notice):**
Office of the Attorney General
Strawberry Square, 16th Floor
Harrisburg, PA 17120

Date: April 1, 2026

**Chad Mark Franco Ferrari, Pro Se**
1119 Wallace Street
Philadelphia, PA 19123
chadferrari@me.com | (215) 483-1985

---

*File with: IFP Motion (AO 240) + Motion for Service by U.S. Marshal (FRCP 4(c)(3)) + Civil Cover Sheet + Related Case Notice (2:26-cv-01866-KSM) + Pro Se Appearance Form + Summons (AO 440)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CHAD MARK FRANCO FERRARI,**
Plaintiff,

v.

**HON. DANIEL R. SULMAN,**
in his individual capacity for damages,
and in his official capacity to the extent prospective
*relief is sought pursuant to Ex parte Young,*
Defendant.

Civil Action No. _______________
(Related to Ferrari v. Leonard et al., 2:26-cv-01866-KSM)

## PROPOSED ORDER

AND NOW, this ____ day of _________________, 2026, upon consideration of the Complaint filed by Plaintiff Chad Mark Franco Ferrari, proceeding pro se, it is hereby ORDERED that:

1. The Clerk shall issue a Summons directed to Defendant, Hon. Daniel R. Sulman, at the Court of Common Pleas, Family Court Division, 1501 Arch Street, Philadelphia, PA 19102.

2. The United States Marshal for the Eastern District of Pennsylvania shall serve the Summons and Complaint upon Defendant pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3), and shall provide courtesy notice to the Pennsylvania Attorney General's Office, Strawberry Square, 16th Floor, Harrisburg, PA 17120.

3. Defendant shall file a responsive pleading within twenty-one (21) days of service.

4. This action is related to Ferrari v. Leonard et al., Civil Action No. 2:26-cv-01866-KSM.

BY THE COURT:

_________________________________

United States District Judge

REC'D APR 01 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

**STATEMENT OF RELATED CASE**

Local Civil Rule 40.1

---

**Newly Filed Case:**
Chad Mark Franco Ferrari v. Hon. Daniel R. Sulman
Civil Action No.: ______________ (to be assigned)

**Related Case:**
Ferrari v. Leonard et al.
Case No.: 2:26-cv-01866-KSM
Assigned Judge: Hon. Karen Spencer Marston, U.S.D.J.
Filed: March 23, 2026

**Basis for Relatedness:**
The newly filed case and Case No. 2:26-cv-01866-KSM arise from the same factual nucleus: the Philadelphia Court of Common Pleas Family Division proceedings involving Plaintiff and his minor children (Case No. OC-24-002084 and related dockets). Both actions involve the same Plaintiff. The newly filed case (Track 1) challenges post-recusal administrative acts by the presiding judge. The related case (Track 2) challenges retaliatory enforcement by law enforcement officers who acted in coordination with the Family Division apparatus. The cases share overlapping exhibits, witnesses, and a common factual timeline spanning March 2025 through the present.

This statement is submitted pursuant to Local Civil Rule 40.1 to facilitate the determination of whether reassignment to the same judge would promote judicial economy.

Date: April 1, 2026

______________________________

**Chad Mark Franco Ferrari, Pro Se**
1119 Wallace Street, Philadelphia, PA 19123
chadferrari@me.com | (215) 483-1985